UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| WILLLIAM F.,[1] | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 3:18-CV-934 JD |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

William F. applied for social security disability insurance benefits and supplemental security income, alleging that he is unable to work primarily due to memory issues. Mr. F. filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based on alleged errors with the residual functional capacity assessment. The Commissioner filed a response in opposition. Mr. F. has not filed a reply, and the time to do so has passed. The Court finds that the ALJ's decision is supported by substantial evidence and affirms the decision.

### I. FACTUAL BACKGROUND

On February 23, 2015, Mr. F. suffered a stroke and was hospitalized. Upon discharge on March 18, 2015, Mr. F. was able to walk independently, had no agitation, and was oriented to person and place, but he had no recall of current events. Mr. F. participated in outpatient speech and language therapy beginning on April 24, 2015. On June 19, 2015, Mr. F. had an initial psychiatric assessment at Oaklawn Psychiatric Center with Dr. Gegeshidze. On August 21, 2015, Mr. F. began periodic outpatient psychiatric visits for medication management with Dr.

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

Gegeshidze, essentially every three months. From his August 2015 visit with Gegeshidze to the final visit on April 26, 2017, Mr. F.'s mental status examinations were largely benign, noting limited insight and judgment, but with a fairly good attention span, improved memory skills but mildly impaired recent and remote memory, a good mood and affect, and logical thinking. Mr. F. often reported forgetfulness and getting frustrated when he could not find things or when he forgot names or telephone numbers. On September 22, 2015, Mr. F. began receiving occupational therapy and physical therapy for balance, cognitive functioning, and strength deficits. He was discharged from physical therapy on October 27, 2015, with improved physical functioning and from occupational therapy on November 24, 2015, with improved grip strength.

On August 18, 2017, the ALJ held a hearing, and, on November 1, 2017, the ALJ issued a decision, finding that Mr. F. had the severe impairments of history of thoracic spine compression fracture, organic mental disorder, depression, bipolar disorder, and chronic obstructive pulmonary disorder (COPD)/Asthma. The ALJ made the following residual functional capacity finding:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with additional nonexertional limitations. He can lift and carry 50 pounds occasionally and 25 pounds frequently; sit for 6 hours, stand and/or walk for 6 hours, and push and/or pull as much as can lift/carry. The claimant can frequently climb ramps, stairs, ladders, ropes, or scaffolds and frequently stoop, kneel, crouch, or crawl. He can have occasional exposure to unprotected heights; moving mechanical parts; operation of a motor vehicle; dust, odors, fumes, and other pulmonary irritants; extreme cold; or extreme heat. The claimant is limited to performing simple, routine, and repetitive tasks and making simple work-related decisions.

AR 16. The ALJ found that Mr. F. was not disabled and denied his application for benefits. After the Appeals Council declined review, Mr. F. filed this action seeking judicial review of the Commissioner's decision.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## III. STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20

C.F.R. §§ 404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV.  DISCUSSION

Mr. F. asserts that the ALJ made four errors in formulating his residual functional capacity—three related to nonexertional limitations and one related to physical limitations. Mr. F. has not shown that the ALJ erred, and substantial evidence supports the ALJ's decision.

The residual functional capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by his impairments. *Young*, 362 F.3d at 1000; 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, *1 (July 2, 1996).

### A.  Mental Residual Functional Capacity

As set forth above, the RFC formulated by the ALJ addressed Mr. F.'s nonexertional impairments by limiting him "to performing simple, routine, and repetitive tasks and making simple work-related decisions." AR 16. Mr. F.'s first two arguments related to the RFC are that the ALJ erred by not adequately accounting for his moderate limitations in concentration, persistence, and pace and his moderate limitations in understanding, remembering, or applying information. In support, Mr. F. lists several pieces of evidence that speak to his memory issues,

5

including Dr. Gegeshidze's notation that Mr. F. reported that he often gets frustrated when he cannot find things or forgets names and phone numbers; Dr. Shull's and Dr. Gegeshidze's notes that Mr. F. can become agitated and have racing thoughts; his own testimony that he does not drive in unfamiliar places; his aunt's testimony that he often texts her the same thing several times a day; and Mr. F.'s father testimony that he forgets many things, cannot drive to new places, and can get lost if he is not driving in familiar places.

At step three of the sequential analysis, the ALJ found that Mr. F. had a moderate limitation in concentration, persistence, and pace. AR 15. The ALJ acknowledged that, in his June 2015 Function Report, Mr. F. alleged that he could pay attention for only ten minutes at a time. AR 15, 292. The ALJ also acknowledged that, in the same month, Plaintiff's mother completed a Third Party Function Report, indicating that Mr. F. could only pay attention for a short time. AR 15, 284. However, the ALJ also noted that, after those initial statements, the mental status examinations at quarterly outpatient psychiatry visits from August 2015 to April 2017 documented that Mr. F. had a fairly good attention span. AR 15, 52, 781, 786, 791, 796, 799–803, 804–808, 810–813, 818. Mr. F. does not recognize that the ALJ relied on these medical records for finding the moderate limitation, nor does Mr. F. acknowledge these medical findings regarding his attention span.

Similarly, the ALJ discussed additional record evidence at step three of the sequential analysis in finding that Mr. F. had only a moderate limitation with regard to understanding, remembering, or applying information. The ALJ noted that the basis for the disability application was alleged memory deficits. And, the ALJ acknowledged that Mr. F. performed poorly on memory testing at his June 2015 psychological consultative examination. AR 14, 590–96. However, the ALJ also noted that the psychological consultant who gave the examination felt

that the validity of Mr. F.'s memory testing was unclear, given Mr. F.'s performance above "chance responding" at the examination, combined with his ability to carry out a variety of activities of daily living. AR 14, 592. The ALJ also noted the outpatient psychiatry visits from August 2015 to April 2017, at which Mr. F. displayed only mild impairments in recent and remote memory. AR 15, 52, 781, 786, 791, 796, 799–803, 804–808, 810–813, 818. Mr. F. again does not recognize the ALJ's reliance on these mental status examinations, nor does Mr. F acknowledge these medical findings regarding his recent and remote memory.

Moving to the RFC analysis, the ALJ incorporated both of these moderate limitations into the RFC, limiting Mr. F. to "simple, routine, or repetitive tasks" and "to simple work-related decisions." AR 16. The ALJ then incorporated the RFC into the hypothetical question posed to the vocational expert, proposing an individual who could, among other things, perform simple, routine, and repetitive tasks and make simple work-related decision. AR 78. In formulating the RFC, as at step three, the ALJ again recognized the favorable evidence of Mr. F.'s testimony, the Adult Function Report completed by Mr. F.'s mother, and the testimony of Mr. F.'s aunt and father. However, the ALJ contrasted those statements with "the mental status examinations of record [that] largely show that he has only mildly impaired recent and remote memory skills." AR 17. The ALJ also found Mr. F.'s "independent performance of a wide variety of activities of daily living . . . inconsistent with marked cognitive or mental deficits." *Id*. Mr. F. does not contest the ALJ's reasoning or reliance on this evidence of record.

The ALJ then went on to thoroughly discuss Mr. F's treatment after his February 2015 stroke. The ALJ discussed the April 16, 2015 outpatient speech therapy and language evaluation. AR 17. He noted the occupational and physical therapy that began on September 22, 2015, for balance, cognitive, and strength deficits and that ended on October 27, 2015, for physical therapy

and November 17, 2015, for occupational therapy. *Id*. The ALJ noted the lack of any subsequent therapy. *Id*. The ALJ discussed Mr. F.'s treatment with primary care physician Dr. Shull for bipolar disorder, which was treated with medication on March 29, 2015. AR 18. The ALJ then noted the initial psychiatric evaluation by Dr. Gegeshidze on June 19, 2015, including her finding that Mr. F. had impaired short and long-term memory. *Id*. The ALJ noted the July 15, 2015 clinical assessment by David Williams, LCSW, at which Mr. F. reported that he was doing much better and had no further therapy objectives to discuss. *Id*. The ALJ recognized the quarterly outpatient psychiatric visits for medication management with Dr. Gegeshidze that occurred from August 2015 to April 2017, noting that the "mental status examinations were largely benign, with limited insight and judgment, but with a fairly good attention span, improved memory skills with only mildly impaired recent and remote memory, a good mood and affect, and logical thinking." *Id*. Mr. F. fails to recognize that the ALJ discussed this body of evidence. Mr. F. does not explain why the RFC for simple, routine, repetitive tasks and simple work-related decisions is not supported by this substantial evidence of record. Nor does Mr. F. propose a more restrictive RFC based on specific evidence.

Mr. F. also argues that the Seventh Circuit Court of Appeals has "repeatedly rejected the notion that a hypothetical . . . confining the Plaintiff to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014). Mr. F. then cites cases explaining that the "ability to stick with a task over a given period of time is not the same as the ability to learn how to do tasks of a given complexity." *Id*. (citing *Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009)); *Craft*, 539 F.3d 668, 677-78; *Young*, 362 F.3d at 1004. However, this case is distinguishable. Although the state agency psychologist found a

moderate limitation in the ability to maintain attention and concentration for extended periods, AR 119, 133, he also found that Mr. F. was "not significantly limited" in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, AR 120, 134. Other than a moderate limitation in the ability to carry out detailed instructions, which is inapplicable because the ALJ limited Mr. F. to carrying out simple tasks, the state agency psychologist found that Mr. Fields was "not significantly limited" in all other categories related to sustained concentration and persistence. AR 119–20, 133–34. Mr. F.'s impairments relate largely to memory, which are accommodated by the limitation to simple, routine, and repetitive tasks. Mr. F. has not shown that the record supports greater restrictions than those in the RFC. *See Jozefyk v. Berryhill*, No. 18-1898, 2019 WL 2021615, at *4 (7th Cir. May 8, 2019) (finding that an RFC for simple, routine, and repetitive tasks with interaction limitations addressed the claimant's moderate difficulties in concentration, persistence, and pace because the ALJ tied the record evidence to the limitation in the RFC finding).

Mr. F. also fails to acknowledge the ALJ's accurate discussion of the opinion evidence of record, and Mr. F. does not contest the weight the ALJ gave to the medical opinions. The state agency psychologist opined that Mr. F. was "not significantly limited" in his ability to understand and remember very short and simple instructions or his ability to make simple work-related decisions. AR 119–20, 133–34. Finally, as noted by the Commissioner, the Seventh Circuit Court of Appeals has acknowledged that, in some instances, a "moderate limitation still demonstrate[s] satisfactory functioning" such that it is not illogical that a claimant with moderate difficulties in concentration, persistence, or pace would still be able to do most jobs. *See Givens v. Colvin*, 551 F. App'x 855, 862 (7th Cir. 2013).

Turning to Mr. F.'s argument that the RFC does not account for his forgetfulness or need for reminders, Mr. F. does not identify any evidence of record not considered by the ALJ that would support greater limitations. In fact, the ALJ noted that Mr. F. testified that his parents remind him to take his medication, yet his mother reported in the Third Party Function Report that he did not need reminders to take his medication. AR 16. Mr. F. offers no response to the ALJ's reliance on this evidence. The RFC for simple, routine, and repetitive tasks and making simple work-related decisions is supported by substantial evidence.

**B.    GAF Scores**

Next, Mr. F. argues that the ALJ failed to address evidence in Dr. Gegeshidze's or Mr. William's evaluations that corroborated the Global Assessment of Functioning (GAF) scores and failed to address why the scores were otherwise inconsistent with the record. However, Mr. F. does not identify any evidence of record, either from the evaluations by Dr. Gegeshidze and Mr. Williams or the rest of the record, that support the GAF scores or would suggest that the ALJ erred in not giving the scores weight.

As explained in the previous section, the ALJ thoroughly reviewed the evidence of record. In that context, he explained his consideration of the GAF scores of record. He noted that in May and June 2015, Mr. Williams assigned Mr. F. a GAF score of 42. AR 18 (citing AR 366-67, 588). The ALJ noted that the following month, on June 19, 2015, Dr. Gegeshidze assessed Mr. F. with a GAF score of 40. AR 18 (citing AR 581). The ALJ then noted that, on August 21, 2015, Dr. Gegeshidze assessed Mr. F. with a GAF score of 43. The ALJ gave several reasons for assigning these scores little weight. First, the ALJ explained that GAF scores include not only Axis I and II diagnoses but also Axis III and IV factors, such as current social and occupational functioning. *Id*. He wrote, "Regarding the accuracy of these assessments, I note that specific

aspects of sociability and concentration or persistence can typically be objectively tested, observed, and verified within the context of a clinical examination. However, a GAF score, being, as its name indicates, a global assessment, paints a rather broad picture that is somewhat less definitive with respect to particular aspects of workplace functioning." AR 18–19. The ALJ noted that GAF scores vary between practitioners and represent only a "snapshot" of the information available on the day of the assessment. AR 19. The ALJ concluded that "the utilization of the GAF score for predictive purposes is severely impaired by a lack of reliability, validity, and the presence of subjective interpretation." *Id*. And, the ALJ noted that GAF scores are no longer recognized by the medical community in the fifth edition of the DSM. *Id*.

Mr. F. has not identified any error with the ALJ's reasoning. Nor has Mr. F. identified any evidence that he believes supports greater limitations or that the ALJ should have considered in weighing the GAF scores. Moreover, the Seventh Circuit Court of Appeals has recognized that a GAF score is "useful for planning treatment" but does not necessarily reflect a patient's functional level. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Substantial evidence supports the mental RFC determination.

**D.      Physical RFC**

Mr. F. argues that the ALJ failed to address any limitations regarding the need for him to elevate his feet. In support, Mr. F. notes his testimony that he wore compression stockings and had to elevate his feet due to swelling. AR 51–52. He also notes that Nurse Practitioner Bikowski ordered compression stockings and recommended that he elevate his feet. AR 524–27. What Mr. F. fails to note is the limited time frame of the treatment for swelling in May 2015 and no record of subsequent treatment. On May 18, 2015, Mr. F. saw Ms. Bikowski for swelling in his ankles and feet, which had suddenly occurred the previous day following increased sodium intake. AR

527. Mr. F. reported that his symptoms were moderate and exacerbated by standing but were improving. *Id*. He reported that elevating his legs relieved his symptoms. On physical exam, he was not in acute distress, he was alert and oriented to person, time, and place, and he was well nourished and well hydrated. AR 527–28. However, he had nonpitting edema in both ankles and feet. AR 528. The exam further revealed that Mr. F. had normal attention span and ability to concentrate, normal sensation, and normal reflexes and strength and that he could ambulate without assistance. AR 528. Ms. Bikowski advised Mr. F. to monitor his sodium intake, use compression socks, and elevate his feet at the end of the day. *Id*.

Several weeks later, on June 3, 2015, Mr. F. returned to Ms. Bikowski for a follow up regarding the recent swelling of his ankles and feet. His physical exam was the same as the May 8, 2015 physical exam in all respects except that he no longer had edema. AR 524–25. This evidence of record demonstrates that the single incident of swelling in May 2015, which required him to elevate his legs for a brief and finite period of time, did not have any impact on his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.921. In his decision, the ALJ noted that, with respect to Mr. F.'s hypertension, the records of the primary care visits in May and June 2015 included a notation from Ms. Bikowski that Mr. F. had benign hypertension that was stable. AR 14. Mr. F. has the burden of providing evidence establishing that his impairments limited his RFC, yet he has not offered any evidence that he needed to elevate his legs during the workday. The physical RFC for medium work with exertional restrictions as set forth above is supported by substantial evidence of record, and Mr. F. has not offered evidence to the contrary.

## V. CONCLUSION

For these reasons, the Court AFFRIMS the Commissioner's decision finding that Mr. F. was not disabled. The Clerk of Court is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 26, 2019

                                              /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court